Good morning, your honors. May it please the court. Sarah Cain, Assistant Federal Public Defender on behalf of the appellant Ralph Tovar. I'd like to start with the claims about which we agree on the standard. That is plain error. Mr. Tovar's second and third claims involve clear violations of well-established rules. The second claim of error involves a jury instruction that is legally incorrect. That is, the jury was offered a modified instruction that Mr. Tovar – so first they were given a pattern instruction, which we don't take issue with other than that it could be misconstrued in the way we say is not correct. But then they were offered a modified instruction that related to the government's lack of a scienter requirement as to the interstate element. We don't take issue with that, but we do take issue with the phrase, the instruction that the jury could – Let me ask you this. Let me quote it to you. This is the offending sentence, I think. Tell me if I'm wrong. You were further instructed that the government need not prove that the defendant knew his conduct involved the use of any facility of interstate commerce and hence occurred in interstate commerce or that he knew that the conduct would affect interstate commerce. That's right. Yes. So I understand your point about the part you were about to quote from, which is that his conduct involved the use and hence in. But the sentence starts off with the government need not prove that. In other words, even if I thought the offending part was wrong, aren't we saying to the jury, this is not what the standard is. The next sentence, because the next sentence is the one you say is fine and it is, which is, it is sufficient that the government proved that the defendant's conduct did in fact occur in interstate commerce or that the natural consequence of the defendant's conduct would affect interstate commerce. If you're telling the first sentence you don't need to – the government doesn't need to do this, the thing that you're upset about, and then the second sentence is you do need to do this and we all agree that that's fine, how is that problematic? Well I think that we have to keep in mind when we're looking at the claims two and three in particular, that these are terms of art that the jury, we have to assume, has absolutely no idea what it means. Because jurists struggle with what interstate commerce means. I certainly don't think it's perfectly clear all the time what in commerce or effect in commerce always means. So these are terms that the jury presumably is reading the instructions very carefully to understand what is this foreign term? What does it mean? We certainly presume that the jury follows instructions with law that says that. Again, if the instruction we're telling them to follow is the government doesn't have to do the very thing that you are worried about, and then the next sentence is it does have to do the right thing, I don't understand how the jury would be confused under that circumstance. Yeah, so my reading of the sentence is that the jury doesn't have to prove scienter, right? But this is all – so I don't know why that would make it less concerning for Mr. Tovar, where our concern is that the jury was given the impression that by the government and the court that basically the in commerce element wasn't something they had to decide. I guess I just – I'm having trouble getting there where it's told you don't – the government doesn't have to prove this. In other words, it – let's say I agree with you it equated those things. But the beginning of that sentence is the government doesn't have to prove that this thing is equated. What it does have to show you is that this thing did occur in interstate commerce, which is in fact the element. Yeah, I think the sentence is compound, and that the jury reading it would take away the two things that were instructed in that single sentence. The government doesn't have to prove scienter, and it is sufficient if his conduct involved the use of a facility of conduct of interstate commerce, which again is actually broader than what the element is, and hence occurred in commerce. If the jury is looking for a straightforward understanding of what does it mean, we're told we can consider whether the conduct – whether Mr. Tovar used a facility of interstate commerce. Okay, that's a cell phone according to the stipulation, and they're going through this, and here they have the clearest indication of what they have to find, and they're told that it's just did the conduct involve the use of a facility of interstate commerce that was stipulated to. And that means it occurred in commerce. These are complex terms, and if they read that sentence, that's what they came away with. So I understand – Didn't you already agree that for this part of the appeal, the standard is plain error? Yes. And here, it is the law of this circuit that at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this court directly resolving it. So you yourself said that part of the issue is that this is all very confusing. I've not seen a case that I think meets that standard. So even setting aside whether Judge Luck is right or wrong about – you two obviously disagree about that, but I don't see anything that clearly establishes a plain error here. Understood. So the reason I think this is plainly erroneous is that jurors are not – it is well-established that you can't give the jury a mandatory presumption. So in other words, you can't tell the jury, if the government has proved that his conduct involves the use of interstate commerce, it hence occurred in commerce. That's the satisfaction of an element. So that's what makes this plainly erroneous. And then we get to the – Yeah, that made me wonder. So if you're wrong about the first argument that you skipped over to go to the jury instruction, but if we reject your argument about that, the jury instruction kind of rises or falls with it, doesn't it? No. So that's why I wanted to start with these claims, because they don't rise or fall with a sufficiency of the first claim. It depends in part on how your honors rule on the first claim, but even if your honors find that the evidence is sufficient, I mean, that is a very difficult – or I would say a low standard for the government to meet, a very difficult thing for us to prove. But even if the court finds that a rational juror could – Let's say that I read the Bastogne decision as holding – as having alternative holdings so that when any one of these is sufficient to prove that Bastogne's conduct was in commerce, even if – so he used the channels or instrumentalities of interstate commerce to facilitate the commission. His use of the phones, the internet, facilitated his trafficking so his conduct was in commerce. If I view those as alternative holdings, that guts your instruction argument, doesn't it? I don't think so, your honor. Of course, you wrote Bastogne, so take my interpretation for what you will, but my understanding of the facts in Bastogne are that they are remarkably different and clearly involved interstate commerce. So even as to JR, who – for whom Bastogne – Let's go back to what I just read a moment ago about the use of the phone and the internet. Sure. And if that's in interstate commerce – So in Bastogne – You take the stipulation that's here. I'm having a hard time understanding what the error is. Okay. Well, our position is that the use of a facility of interstate commerce in Bastogne involved interstate commerce and that was folded into – I mean, those are the facts of the case and the court can't hold beyond the facts of that case. The conversations that Bastogne had with – Well, it can't hold beyond the facts of the case, but some of the facts are using the internet and using a phone and it can hold that that alone is sufficient. Your honor, the facts in Bastogne involved interstate phone conversations. Except that – and I think the – where I agree with the Chief Judge is on the alternative holding because the rest of that paragraph says this. And even if we were to assume that J.R. exclusively in Florida. So we indulge the assumption that it's all intrastate, not interstate. We then say we have held that a defendant whose illegal acts ultimately occur intrastate still acts in commerce if he uses the channels or instrumentalities of illegal commerce to facilitate that commission, citing and quoting Ballinger. And then we say the use of the phone, the internet, and the hotels and buses facilitated the traffic so his conduct was in commerce. So how is that not an alternative holding for – even if it is intrastate, it still would meet, your honor? Right. So I'm going to quote Ed Verzvers Prime from the 11th Circuit 2010. It's in the briefing. Yeah, I understand. So that's dicta. It can't hold beyond its facts, but what we can do is hold – in other words, as I understand Bastogne, he argued to the court, hey, this was done intrastate. The same argument you're making to us. Intrastate. Intrastate. Right. Intrastate. And because it's done intrastate, it doesn't meet the element. And what we said there is, first, we think there is some intrastate stuff here. But even if there is not, we hold X or Y. I think that respectfully – I mean, I didn't write the opinion, so – but my understanding of what Bastogne argued, because I went back and reviewed the briefs, was that the connection with intrastate commerce – I don't care what the brief said. I care what the opinion said. Respectfully, Judge Luck just told me what Mr. Bastogne argued, and I think that he argued that this was insufficient. But which reflected in the opinion that he argued. Yes. My interpretation of the term, even if we assume, is that what follows is dicta. And I'm relying on Edwards v. Prime for that proposition. It is true that if Your Honors find that Bastogne held that for any circumstance, anybody who uses the internet, even in Mr. Tovar's case, where that use is viewing, not posting, I made a separate argument that that is insufficient. How about the facts of Edwards, though? In Edwards, at the very least, the internet backpage.com ads had to have been done intrastate. Because what happened there is, she traveled – the young woman traveled from outside to inside. And then once she was inside, they advertised on backpage ads to get solicitations for clients. And so there, that would – at least the internet part would have been intrastate. And we seem to suggest there that that's sufficient. Did we not? Is Your Honor discussing Evans? That's right. That's what I'm talking about. So I agree, for example, with the Seventh Circuit's instructions in Young, the government and I both agree, that posting on the internet is qualitatively and legally different than viewing an advertisement posted by federal agents. Here's why. One, it's active employment of the internet. But two, jurors can rationally and reasonably infer that something that's posted on the internet is viewable anywhere in the world. That makes it intrastate. It makes it foreign. It makes it everything. It covers in intrastate commerce. Posting something on the internet is different. And we agree that that would suffice, but that's not what we have here. So that is an important distinction with Evans. It's also an important distinction with every single pimping case, which is the vast majority of cases addressing the interstate commerce element. I also want to point out that Mr. Tovar is an attempted solicitation case. So our position is that completed solicitation cases by pimping are distinguishable and important intrastate respects. Thank you. I'll save the rest of my time for a moment. Okay, Ms. Cain. Thank you. Ms. Cohen. May it please the court. Alex Cohen for the United States. With me at council table is Ed Gardea, one of the trial lawyers below. This court should affirm Tovar's convictions because he cannot show any error, plain or otherwise, with respect to the interstate commerce element. Unless the court has another preference, I'll start with the sufficiency of the evidence because I agree with Chief Judge Pryor's suggestion that the sufficiency and the jury instructions issues rise and fall together. Can we talk first about the standard of review? Yes, Your Honor. What do we do with Clay? I believe Clay is an anomaly. Clay is wrong and we shouldn't follow it. Correct. Clay does not cite any authority for the proposition that this is an issue of subject matter jurisdiction that can't be waived. There are cases before Clay from this circuit as well as cases since Clay holding the exact opposite. So I think Clay was wrongly decided and this court is not obligated to follow it under the prior panel precedent rule because the cases in our 28J letter from before Clay show that this court has actually held the opposite. Your opposing counsel tells us there's other cases where we've labeled these sorts of elements jurisdictional elements and because it's a jurisdictional element, we can decide it at any time, right? I mean, that's the most recent supplemental authority letter that we received. Correct. In my opponent's 28J letter filed last night, she cites to several, some former Fifth Circuit and even earlier Eleventh Circuit cases, but not one of those cases actually holds that this is a question of subject matter jurisdiction that can't be waived. They do use the language jurisdiction, but those cases were decided before the Supreme Court cases in the early 2000s that guided lower courts not to loosely use the term jurisdiction. No, but I, you know, unless those are directly on point with those elements, it's hard to say that every time we've used the term jurisdictional element, those cases are abrogated. Once we call it a jurisdictional element, which is why we should be really careful about using terms like that. How do we say in, in with the exact element we're talking about here in commerce, although different statutes, I concede, how do we say that that somehow is not jurisdictional? Well, in Torres versus Lynch, the Supreme Court explained that that when the term jurisdictional is referring to legislative jurisdiction, which is Congress's power to enact a law that is different from a district court subject matter jurisdiction, which is the authority to hear a case. I understand the concept. I'm just trying to reconcile the case law. Even in the fifth circuit cases cited in the 28 J letter filed last night, the, the way they use the term jurisdiction in one of them, for example, it says this goes to the federal government's jurisdiction. I think that's different than saying the court's jurisdiction. They also refer to something. One of them says Hobbs act jurisdiction. Another says travel act jurisdiction. I think those formulations are all doing what Torres versus Lynch describes. They are referring to the legislative jurisdiction. We should be precise in our use of the term jurisdiction, but that doesn't mean we should avoid using it where it's being used in a different sense. We should just be clear about what we're doing. That's correct, Your Honor. And, and, and in any event, Tavares claims would fail under any standard of review. And we don't, we'll just one more thing on that. We don't, we don't have to, in light of the Supreme Court's clarification of how the words should be used, we don't have to read the word jurisdiction to its fullest possible extent where we don't read the court as saying that it was subject matter jurisdiction say rather than the government's jurisdiction, right? That's correct. And I especially think that's true given that none of those earlier cases squarely present the question of whether this is subject matter jurisdiction that can't be waived. None of them arise in that context or squarely address that issue. And there's also Supreme Court cases that have said when courts have loosely used the term jurisdiction, we don't need to give those presidential value because they're using the term loosely to refer to any sort of threshold fact finding. That's not necessarily a ruling on what is subject matter jurisdiction. One question I was puzzling through as we think about the standard of review is how much it really makes a difference here, not only, not only because if, if you say that, you know, you went under any standard for just the general reasons, but isn't the, isn't the sufficiency argument here more legal than your average sufficiency argument? Like what, given that their argument, as I see it as largely legal about how not did you have this piece of evidence, but what does this piece of evidence legally mean? How do you implement a plain error standard for that? Is it, is the plain error, whether it's clear that that was, um, an instrumentality or, you know, the various qualifications or is it plain error in a different way? Can you walk me through that? Yes, Your Honor. Um, I agree with Your Honor's characterization that their sufficiency argument is really more of a statutory interpretation argument. If our reading of the statute is correct, then we prevail on that claim as well as the jury instructions claim. I believe the way plain error would be applied is that unless this court had a binding authority that explicitly adopts their interpretation of the statute, then they cannot prevail on plain error review. Right. So to the extent that they say it's confusing or not quite clear, then if we were applying, if we're applying plain error, then they lose anyway. There has to be a very clear legal holding to the contrary of what, of what happened here, right? That's correct. I'm still confused about what to do with Clay because Clay does directly address the issue. Yes. Clay is the one case that does directly. It calls the, the equivalent of in commerce in 922 G jurisdictional and then says and uses it in the subject matter jurisdiction sentence. Correct. What's inconsistent with that? So I think Clay is inconsistent with the earlier cases that we cited in our 2018. So like you use a Kila for example, yes, but that's not quite on point there. I mean, again, it's not dealing with commerce. Um, it's not dealing with a commerce clause, sort of jurisdictional hook that's dealing with a very different one, as I recall, right? That's correct. But we also say one, I, I think the pronunciation is viscom that was in a guilty plea situation where the court held that the guilty plea waived an interstate commerce challenge because that's not a jurisdictional issue that wouldn't be weighed by a guilty plea. So I think, and you can't waive subject matter jurisdictions. The only way to understand that is it has to be jurisdictional in the sense that you've argued earlier. That's right. Your Honor. It wasn't a sufficiency challenge, right? I don't recall the way the parties articulated the claim on a guilty plea, right? The whole a sufficiency challenge, right? That's correct. But should, should the court feel that it were bound by clay, which I don't think again, that we don't have to decide any of this because all we have to say is under any standard of review. So even including DeNovo, you think that, that there's still a sufficient evidence, right? That's right. Tell me that. Tell me why that is the case. Yes, Your Honor. So first in Boston, this court decide this court held that making phone calls, sending text messages and using the internet to advertise commercial sex. Each was sufficient to satisfy section 1591 interstate commerce element. Do you agree though, assuming the facts in, in Bestone were that, and it seems like they were that, that those calls and the use of the internet were between states as opposed to intrastate, um, that that does at least factually take this, take that case outside of this one. I agree with respect to the phone calls and the text messages. It was in the record in the case that the victim was in Georgia while the defendant was trying to lure her to Miami. So those were interstate with respect to the internet advertising. As far as I can tell from the record in that case, I don't believe there was actual evidence that the backpage.com ad reached people from other states. And surely if using the internet to sell commercial sex is in commerce, so should using the internet to buy commercial sex. So I think with respect to the internet, it's if not controlling highly persuasive, but even if Bastogne were distinguishable, there are other cases from this circuit and the Supreme Court by though, I mean, at least as I understand the facts here, it's, you're not bought over there. There's just an ad that says, Hey, call this number. And then the number is called and that is an intrastate. In other words, it's different if you were like using Amazon and you're like pressing submit, the purchase is done over the internet. But here there's no, as I understand it, no act that's done over the internet by the solicitor. There just is, I saw the ad and I'm calling the phone number I'm supposed to call, right? There is that one additional step as your honor points out. But what Tovar did was go on the internet searching for an ad for commercial sex, found one on the website mega personals, which is known to be used for commercial sex trafficking of children, and then used a phone to contact the undercover agent. Is that using the internet though in the same way that, that we saw in Bastogne? I mean, because again, Bastogne is your, it's the solicitor, not the solicitee. It's the person who is not the person, it's the person who's trying to sell as opposed to the person who's buying. There, there's an act of I am uploading the ad to the internet. I am physically doing something on the internet. Here there really isn't an act involving the internet other than I guess looking. Well, it is a distinction. I don't think it's a meaningful one because I think using the internet as your tool or source or as essentially the marketplace to go and find commercial sex for purchase, that is just another side of commerce, right? Selling and buying are the two aspects of commerce. So by going on the internet to search for an ad to buy sex with kids, I think that is active use of the internet. But even if Bastogne were distinguishable, I still think there are precedents from the circuit and the Supreme Court that lead to the conclusion that our view of the statute is correct. And what's that? In Ballinger, this court explained that in commerce denotes Lopez categories one and two, the channels and the instrumentalities of interstate commerce. And in Lopez itself, the Supreme Court says that Congress may regulate and protect the instrumentalities of interstate commerce, even though the threat may come only from intrastate activities. Do you think use where the term in commerce is used, use interstate automatically qualifies? Where we're referring to instrumentality. I think the channels is a harder question. I think when cases are referring to the channels, they often do use this interstate flow of with respect to the instrumentalities, as long as it's invoking Lopez category two instrumentalities may be regulated intrastate. And this court's opinion in Evans supports that interpretation in analyzing the 2422B claim in that case, which I understand is a different statute. But analyzing that claim, the court's reasoning was that under Lopez category two, Congress may regulate the intrastate use of a cell phone. So if that falls under Lopez category two, it's also encompassed by the in commerce language here since in commerce denotes Lopez category one and category two. I'm just curious as to why there was no argument done by either of you, but the government here on the affecting prong. In other words, like under affecting, we sort of aggregate all the context there. And it would seem that that while this might not affect much, if you aggregate all of the intra and interstate solicitations that that would equal it. But that argument really isn't made anywhere. In our brief, we did argue both in the alternative. We started with the in commerce argument and then alternatively argued this is also an effect on commerce as well. Is that the easier way to decide this rather than trying to parse out whether it's only intrastate or interstate and how the cases sort of fit? Is it just easier to say this is affecting? It could be easier given the case law that says affecting invokes the broadest possible commerce clause power. So we do think we could prevail on an affecting theory as well. But it's also our view that this is in commerce under Lopez, Evans, Bastogne, reading all those cases together. As the Fifth Circuit persuasively said in its en banc opinion in Merak, when it comes to Lopez category two, it's the nature of the instrumentality that supplies federal jurisdiction, not separate proof of interstate movement. So we do think it's in commerce. But we do alternatively argue a fact. Let's say you're right about everything with regard to the first. We look at a de novo, you still win for the reasons you've just articulated. They argue and let's say that I read the closing argument statement that wasn't objected to as a statement of essentially jury, you need to direct a verdict on this. There's no issue here. Direct a verdict on this. Is that error? Because even if you're right about what the evidence would show, you still wouldn't direct a verdict on it. A jury still has to then decide whether that evidence is sufficient or not and has to apply whatever beliefs and credibility and all the things that juries do. Um, it's not right to be able to tell the jury just direct a verdict on that, is it? No, your honor. And admittedly, it was incorrect for the trial lawyer to say to the jury that they did not need to decide the interstate commerce. I think that was our, I think it was incorrect, but it doesn't necessarily rise to the level of misconduct because one of the considerations for misconduct is whether you would in context, the comment was, was made intentionally or in bad faith or calculated to deceive. I don't, I don't need to, we don't need to, to label it, but if it's error, if it's error for the, the, the, the prosecutor to have done that here, then doesn't that mean that we don't have to apply harmless error standards and are plain error standards here? Since we're here on plain error, he would have to, the defendant would have to show prejudice and he can't do that here. He can't do that because the jury instructions would have mitigated any prejudice in this case. The court instructed the jury four separate times that what the lawyers say is not evidence. The court also specifically said what the lawyers say is not binding on you. In addition to that, the court did instruct the jury that when you combine that with the admittedly not great sentence that I read earlier in the jury instruction, it does seem to suggest that you're having both the court and the prosecutor tell you that this is what it, this is that, and you don't have to decide this, right? Well, we presume that the jury follows the court's instructions and the court gave very clear instructions in this case. Again, in both the opening, the preliminary instructions, the final instructions, immediately before opening statement and immediately before closing argument, each of those times the court said what the lawyers say is not, is not evidence. And even in one of those times said it's not binding on you. By contrast, the court did say you must follow my instructions on the law and then instructed the jury. It has to find every single element proven beyond a reasonable doubt. Also, I just want to note to put that statement in context, when the lawyer said that while it was an artful, what she meant was that the interstate commerce element was obvious or wouldn't take a lot of time to decide. And in view of this record, that was a, that point was correct because even in Tovar's own testimony, he admits that he used a cell phone and that he used the internet. He just contended that he was doing so to try to save the girls. So there was abundant undisputed evidence of the interstate commerce element. And not only did the defense not object, but in the defense's own closing argument, the defense started by saying the government can't meet their burden in this case because they can't prove the element that they talk about the knowingly. They can't prove what was in my client's mind on May 6th. And that's what this case is all about. So the defense was entirely focused on the knowledge element. So that in addition to the fact that the court gave jury instructions explaining the jury did need to find every single element beyond a reasonable doubt, I think mitigates any prejudice that could have resulted from those comments. If the court has any questions, I'm happy to address them. If there are none, the government will rest on its brief and ask that the court affirm the convictions. Thank you, Ms. Cohen. Ms. Kane, you've saved four minutes. Thank you, your honors. Quickly, this is the first time that I believe this is the first time the government has alleged that the use of facilities of interstate commerce is actually the use of instrumentalities of interstate commerce. There's a difference between determining... I honestly don't know the answer, whether facilities are the use of channels of interstate commerce or instrumentalities of interstate commerce, but I know what the jury was told, which is just facilities. So we would dispute that this was established beyond a reasonable doubt that these were instrumentalities of interstate commerce. Again, it goes to Judge Grant's point that this is a mixed question of fact and law. It is unlike other sufficiency of the evidence arguments. I think that is why courts have struggled with the standard of review. I'm reading the instruction. Yes, your honor. The jury could consider whether Tovar used means or facilities of interstate travelers, whether his conduct substantially affected interstate commerce by virtue of the fact that he purchased items that had moved in interstate commerce. Yes. Right? That's the instruction. That's the instruction. But the stipulation was to facilities. That's what was established. That was what was agreed. The cell phone was a facility of interstate commerce. So there was no argument about means of interstate commerce. There was no evidence that cell phones or the Internet are means of interstate commerce. There certainly was no evidence that the hotels were used in interstate commerce or any evidence, any evidence as to affecting interstate commerce. That's important. So one, I want to note that the government didn't argue in its brief as far as I know, and certainly before the jury, this was an instrumentality. Yes, your honor. I'm having trouble following that argument, though. If the jury was instructed about it, notwithstanding whatever the stipulation is, it doesn't limit the jury in its consideration of the evidence it heard, including the stipulation, right? Your honor, there was no basis upon which the jury could conclude that the that there was an effect on interstate commerce. There was nothing here for the jury to say. This affects interstate commerce. It's a term of art. It's not our common understanding of what it means to affect. It's a term of art. And there was no argument and no evidence as to whether this affects interstate commerce. Isn't isn't this case in certain ways? I don't expect you to agree with this, but the archetypal reason for the plain air standard. I mean, the points that were raised were about his assertion that he had intended to be a hero and save these girls. The court, none of this was put to the district court. And if there if there are any questions about this, then isn't the reason we have the plain air standard to the district court and consider those in the first instance? Well, first of all, even if the district court had considered this in the first instance, on de novo review would be given no, I mean, the court wouldn't defer. So the court would just look at this again and independently decide, is this in commerce or not? So unlike other areas of appellate review, there's no discretion to the district court's assessment. So I want to touch on Ballinger, which is, of course, an en banc decision in which the this en banc court held that the term in commerce was the shorthand for the former section 247 interstate commerce jurisdictional hook, which had combined travel in interstate or foreign commerce and the use of a facility or instrumentality of interstate or foreign commerce in interstate or foreign commerce. So in an en banc decision of this court, it was held that the term in commerce is shorthand for those two things, neither of which are satisfied here. So that's our clearest argument under plain error. Um, I do want to briefly touch on I have I have two seconds. Um, I want to close on the government's closing argument. So we agree with Reeves on the standard for reversible error based on government argument. There are 55 factors and this argument meets all five. It's not incidental. Yes, sir. All right. I think we understand that. Thank you, Miss. Thank you, Your Honor. It's a great way to begin today to find advocates. You can both come back anytime.